IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KDC FOODS, INC.,

                                       OPINION AND ORDER

               Plaintiff,

                                  12-cv-636-bbc

      v.

GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.,
PHILLIP BOHL, DANIEL TENENBAUM, JENNIFER DASARI
and ATTORNEYS' LIABILITY ASSURANCE SOCIETY, INC.,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil action, plaintiff KDC Foods, Inc., has brought multiple claims against defendants Gray, Plant, Mooty, Mooty & Bennett, P.A., plaintiff's former law firm; three lawyers from the firm who worked with plaintiff, Phillip Bohl, Jennifer Dasari and Daniel Tennenbaum; and Attorneys' Liability Assurance Society, Inc., defendants' malpractice insurance company. (The insurance company plays no part in this opinion; all references to "defendants" are to the individual defendants.) Plaintiff alleges that defendants participated in a conspiracy with plaintiff's former chief financial officer, Don Johnson, and other actors, to make plaintiff insolvent or bankrupt in order to steal from and defraud it. Plaintiff brought a state court suit against Johnson and others; it won its case against Johnson and some of the others it had sued, settled with others and dismissed the case as to still other defendants. Plaintiff brought a second state action, this time against the lawyers

1

who represented it during Johnson's tenure.  Defendants removed this action to this court.

Diversity jurisdiction is present under 28 U.S.C. § 1332.

Plaintiff asserts seven claims against defendants: (1) fraud; (2) civil action under the

Wisconsin Organized Crime Control Act; (3) conspiracy to commit theft by fraud under

Wis. Stat. §§ 939.31, 943.20 and 895.446; (4) breach of contract; (5) negligent provision

of legal services; (6) breach of fiduciary duty; and (7) civil conspiracy.  Plt.'s Amended Cpt.,

dkt. #12, at 34-38.  Plaintiff has abandoned a breach of contract claim it alleged in its

original and amended complaints.  Plt.'s Opp. Br., dkt. #108, at 23.

Both parties have moved for summary judgment.  Dkts. ##29 & 30.  I find as a

matter of law that plaintiff brought most of its claims after the statutes of limitations had

run and has failed to prove the elements of its remaining claims.  Consequently, defendants

are entitled to summary judgment on all plaintiff's claims.  Defendants have also moved to

strike 11 of plaintiff's filed declarations, dkt. #155, and plaintiff has moved for leave to

amend its complaint for a second time, to reflect its error in citing Wis. Stat. § 943.20(b)

rather than Wis. Stat. § 943.20(d), dkt. #157.  Because I have not relied on any of the

additional declarations filed by plaintiff and because I am granting defendants' motion for

summary judgment as to all of plaintiff's claims, these motions are moot.

From the parties' proposed findings of fact, I find that the following facts are

undisputed.


UNDISPUTED FACTS

2

## A.  The Parties

KDC Foods, Inc. was founded in 1996 to create and sell baking products and related manufacturing techniques.  Plaintiff is a Wisconsin corporation with its principal place of business in Wisconsin.  Defendant Gray, Plant, Mooty, Mooty, and Bennett, P.A. is a Minnesota corporation with its principal place of business in Minnesota.  Defendants Bohl, Dasari and Johnson are all Minnesota citizens.  Defendant Attorneys' Liability Assurance Society, Inc. is a Vermont corporation with its principal place of business in Illinois.

## B.  Defendants' Representation of Plaintiff

On March 1, 2004, plaintiff hired Don Johnson as its chief financial officer with a six month contract.  On the same day, Johnson contacted Daniel Tenenbaum of the Gray Plant law firm, who represented another business with which Johnson was affiliated, and asked whether Gray Plant would represent plaintiff.

Gray Plant sent a signed engagement letter on June 22, 2004.  Tenenbaum and Gray Plant's general counsel, Michael Flom, discussed the addition of conflict waiver language.  Tenenbaum informed Flom that Johnson "has been and continues to be a client of [his]."  Flom Dep., exh. 23, dkt. #22.  Conflict waiver language was added to the letter regarding Johnson and Consolidated Interest Corporation, a company affiliated with Johnson.

During 2004, plaintiff was having financial problems and retained Gray Plant for legal services related to corporate restructuring, intellectual property and recapitalization matters.  By the end of summer in 2004, plaintiff had not realized any recapitalization or

debt-reduction efforts.

On September 14, 2004, Johnson sent a resignation letter, but did not actually leave his post until November 5, 2004. On October 1, 2004, Gray Plant wrote plaintiff, demanding payment for fees. By letter dated November 9, 2004, Gray Plant resigned as counsel for plaintiff, citing unpaid fees.

### C. Plaintiff's Bankruptcy and Asset Sale

On December 21, 2004, plaintiff filed for bankruptcy, pursuant to a December 3 board of directors' vote. In re KDC Foods, Inc., Case No. 04-18931 (W.D. Wis.). On April 15, 2005, plaintiff sold its assets to First Products, Inc. in an asset sale approved by the bankruptcy court.

First Products, Inc. was incorporated in Minnesota on September 29, 2004 by Paul A. Zimmer, with Johnson and his associate Jeff Covelli in charge. During the bankruptcy asset sale, the Reinhart law firm represented First Products, Inc. No one from Gray Plant communicated with that firm regarding its representation of First Products, Inc.

From March 2007 until February 2010, Gray Plant represented First Products, Inc. during plaintiff's litigation against the company. Gray Plant did not inform plaintiff of its representation of First Products, Inc., and it did not obtain conflict waivers from either corporation's representatives. Tenenbaum says that he was not aware of any litigation between plaintiff and First Products, Inc. before becoming counsel for First Products, Inc. and that once he did become counsel he did not represent First Products, Inc. on any matters

4

involving plaintiff.  Gray Plant collected more than $80,000 in legal fees during its representation of First Products, Inc..

### D.  Plaintiff's First Suit

On November 12, 2004, plaintiff's shareholders filed a derivative suit in the Circuit Court for Eau Claire County against certain corporate insiders.  On June 27, 2006, the plaintiffs in that case amended their complaint to convert it from a derivative to direct action suit, replacing shareholder plaintiffs with plaintiff and adding Johnson, Jeff Covelli, First Products, Inc. and others as defendants.  Plaintiff alleged that defendants in that case had conspired to defraud plaintiff of its intellectual property by driving plaintiff out of business and then purchasing its assets at bargain prices.  In addition, plaintiff alleged that defendants inappropriately issued an IRS Form 1099 to plaintiff's former board member and shareholder, Stanley Popko.  Plaintiff based its claim of defendants' liability in part on defendants' wrongful issuance of stock at below market prices.  The case was removed to this court where its federal claim was dismissed and the matter was remanded to the state court in Eau Claire County for lack of subject matter jurisdiction.  A state judge entered judgment in January 2010, finding some defendants liable to plaintiff.

### E.  Information Known by Plaintiff

On January 20, 2005, the bankruptcy court appointed Dennis Sullivan as receiver to pursue plaintiff's claims, including those asserted in the state court suit discussed above.  On

5

March 10, 2006, during his investigation of plaintiff's claims, Sullivan requested the company's file from Gray Plant, asking specifically for notes. Gray Plant responded on April 7, 2006, with documents from plaintiff's file, for which Sullivan signed and sent an acknowledgment of receipt on April 13, 2006.

The file contained emails, memoranda and time records outlining what defendants did and did not do during the course of their representation of plaintiff. For example, Dasari indicated that she worked on the issuance of 1099 forms and on the issuance of stock certificates. Cpt., dkt. #1, at ¶ 95. In addition, a Gray Plant paralegal's time sheet was available in the file, indicating that the paralegal had spent time preparing stock certificates for plaintiff. Bohl noted in his time sheets emails and discussions he had with plaintiff's employee Kim Myers about issuing 1099 forms for other shareholders. The file also contained email exchanges between Tenenbaum and Johnson in which capitalization, financing and debt reduction opportunities were discussed. The file contained a June 7, 2004 email from Johnson to Tenenbaum, discussing four options for dealing with plaintiff, one of which read as follows: "(4) Form as you suggested a new acquisition company and buy the assets." Rectanus Aff., exh. 1c, dkt. # 51.

Plaintiff had at its disposal a memorandum drafted after a meeting between plaintiff and defendants, listing ways to "handle" the shareholders with whom plaintiff was having trouble. These methods included hiring a lawyer to bring claims against the shareholders for various claims, including violating confidentiality and trade secret protection provisions of their contracts.

6

On April 24, 2006, Sullivan inquired about emails from Tenenbaum and Dasari that were missing from the file. Gray Plant supplied those emails on May 19, 2006. On November 26, 2006, Sullivan requested another missing document, a proposal from Van Clemens for $1 million in financing for plaintiff, which Gray Plant provided on the same day as requested.

Other than four pages of handwritten notes produced originally, the file sent in April 2006 did not contain notes. As part of their Rule 26 disclosures for this case, defendants produced 77 pages of handwritten notes that had not been disclosed with the file sent to Sullivan in 2006. By policy, Gray Plant did not include any handwritten attorney notes in normal client file transfers.

After the file transfer, on May 6, 2006, a shareholder of plaintiff, Richard Wanke, sent an email to Sullivan that read in relevant part as follows:

> Harry and Gibbs indicated that Gray Plant and Mooty appraised the stock at $0.01. I believe it was Tennenbaum [sic]. Gee, I wonder what his credentials are? Note also that Phil Bohls [sic] denied that they appraised the stock. My gut feeling is that Tennenbalm [sic], Don's (Consolidated Interests Corporation CIC) personal attorney, said he thought Don could get away with $0.01 per share based on Don's trash talk about the company. Definitely a conflict of interest. Rectanus Aff., exh. 1o, dkt. #51.

OPINION

In their motion for summary judgment, defendants raise several affirmative defenses: (1) plaintiff lacks "standing" because it is a bankruptcy debtor and all of its claims are the property of the bankruptcy estate over which it has no rights; (2) plaintiff's claims are untimely under the applicable statute of limitations; (3) plaintiff's release of certain

defendants estops it from bringing claims against these defendants; and (4) the previous state court judgment precludes plaintiff from bringing a claim against these defendants, as conspirators who have privity with the original defendants.  Defendants also assert that plaintiff loses on the merits of its claims because it lacks evidence to prove the applicable culpability of defendants (intent or breach of the standard of care) and to prove the damages for which it is suing.  In plaintiff's motion for summary judgment, it argues that the court should resolve all its claims in its favor as a matter of law.

I need not consider defendants' first argument because the bankruptcy court has now approved the trustee's abandonment of this case and defendants have forfeited this argument by admitting that plaintiff's claims are no longer part of the bankruptcy estate.  With respect to defendants' statute of limitations defense, I conclude that defendants have proven as a matter of law that plaintiff's claims for fraud, negligence, breach of fiduciary duty, civil conspiracy and conspiracy to commit theft are untimely.  Defendants also argue that plaintiff's claim under the Wisconsin Organized Crime Control Act,  Wis. Stat. § 946.83, was barred by the statute of limitations and plaintiff made no effort to rebut this argument, either in opposition to defendants' motion or in support of its own summary judgment motion.  Thus, plaintiff has waived this claim.

This leaves plaintiff's claims as to defendants' representation of an adverse party and defendants' failure to disclose handwritten notes in its first file transfer to plaintiff. Defendants' third and fourth affirmative defenses (estoppel and claim preclusion) do not apply to plaintiff's remaining claims because these claims arose out of different transactions

that took place after the start of the state court litigation and do not involve the transaction or incident (the larger conspiracy) addressed in that suit.  Arnold v. Shawano County Agricultural Society, 106 Wis. 2d 464, 470, 317 N.W.2d 161, 164 (Ct. App. 1982) aff'd, 111 Wis. 2d 203, 330 N.W.2d 773 (1983) overruled on other grounds by Green Spring Farms v. Kersten, 136 Wis. 2d 304, 401 N.W.2d 816 (1987)("[R]eleases will not bar claims that were not within the contemplation of the parties at the time of execution of the agreement."); Parks v. City of Madison, 171 Wis. 2d 730, 735, 492 N.W.2d 365, 368 (Ct. App. 1992) ("Wisconsin has adopted the 'transactional analysis' of the Restatement (Second) of Judgments § 25 cmt. a (1982), as a guide for applying the rule [of res judicata]. Under this analysis, all claims arising out of one transaction or factual situation are treated as being part of a single cause of action . . . .").

## A.   Statutes of Limitations

Defendants have the burden of proof on their affirmative defense that most of plaintiff's claims are barred by the applicable statutes of limitations.  Bostco LLC v. Milwaukee Metropolitan Sewerage District, 2011 WI App 76, ¶ 68, 334 Wis. 2d 620, 659, 800 N.W.2d 518, 538, aff'd in part, rev'd in part on other grounds, 2013 WI 78, 835 N.W.2d 160.  Although they argue generally that all of plaintiff's claims are barred by the statute of limitations, defendants have not developed an argument with respect to plaintiff's breach of fiduciary claims duty as to defendants' representation of First Products, Inc. and fraud and breach of fiduciary duty claims for defendants' nondisclosure of handwritten notes

in its April 7, 2006 file transfer.  Because defendants bear "the burden of proving [their] affirmative defense that the statute of limitations ha[s] expired," id., I have not considered whether these claims are untimely.  Thus, this section will be limited to a discussion of plaintiff's claims of breach of fiduciary duty, fraud, negligence, civil conspiracy and conspiracy to commit theft, to the extent these claims deal with plaintiff's injuries related to its bankruptcy and asset sale.

Both parties cite Wisconsin law as well as federal case law interpreting other states' law to establish their arguments.  Because this is a case in which jurisdiction arises from diversity, the forum state's statutes of limitations and associated rules apply.  Hollander v. Brown, 457 F.3d 688, 694 (7th Cir. 2006) ("Like the statute of limitations itself, rules that are an 'integral part of the statute of limitations,' such as tolling and equitable estoppel, are treated as substantive for purposes of the Erie doctrine." (quoting Walker v. Armco Steel Corp., 446 U.S. 740, 746 (1980)).

The parties agree that under Wisconsin law three of plaintiff's remaining claims have at most a six-year statute of limitations period.  Wis. Stat. § 893.93(1)(b) (fraud); Wis. Stat. § 893.52 (legal malpractice negligence); Segall v. Hurwitz, 114 Wis. 2d 471, 486, 339 N.W.2d 333, 341 (Ct. App. 1983) (civil conspiracy).  (Although both parties read Segall as imposing a six-year limitations period on civil conspiracy claims, it is not clear whether Segall remains good law.  Mirbeau of Geneva Lake, LLC v. City of Lake Geneva, 746 F. Supp. 2d 1000, 1014 (E.D. Wis. 2010) (finding that Segall was superseded by Wis. Stat. § 893.57, which changed the limitations period for all intentional torts to two years.  The statute was

10

amended in 2010 to make the limitations period three years, but the enlargement of time would not apply to this case because the legislation specified that the change "first applied to injuries occurring on the effective date of the act."  2009 Wis. Act 120.)

The parties dispute whether the six-year fraud limitations period or two-year intentional torts limitations period should apply to plaintiff's claim for conspiracy to commit theft, under Wis. Stat. § 895.44, but the argument is immaterial.  Both the civil conspiracy claim and the claim arising under Wis. Stat. § 895.44 are untimely even under a six-year limitations period.

For the breach of fiduciary duty claims, either a two-year limitations period or three-year limitations period applies because, like the tort of civil conspiracy, the tort is considered an intentional one.  Zastrow v. Journal Communications, Inc., 291 Wis. 2d 426, 718 N.W.2d 51 (2006).  Depending whether the injury accrued after February 26, 2010, the effective date of the statute extending the limitations period to three years.  Wis. Stat. § 893.57; 2009 Wis. Act 120.  Once again, it is immaterial which period applies in this matter because the breach of fiduciary duty claims are untimely either way.

The statute of limitations period begins to run when a claim accrues.  Wis. Stat § 893.04.  Under Wisconsin law, "a cause of action accrues when there exists a claim capable of enforcement, a suitable party against whom it may be enforced, and a party with a present right to enforce it."  Pritzlaff v. Archdiocese of Milwaukee, 194 Wis. 2d 302, 315, 533 N.W.2d 780, 785 (1995).  See also Meracle v. Children's Service Society., 149 Wis. 2d 19, 437 N.W.2d 532 (1989); Barry v. Minahan, 127 Wis. 570, 573, 107 N.W. 488 (1906);

11

Rubenzer v. Associated Banc-Corp, 2012 WI App 62, 341 Wis. 2d 490, 815 N.W.2d 406;

Wittenberg Ford-Mercury, Inc. v. Rosenow, 2011 WI App. 99, 334 Wis. 2d 806, 800

N.W.2d 957.  Put another way, claims accrue when a plaintiff experiences an injury from

an identifiable party and when that plaintiff has the right to sue.  Pritzlaff, 194 Wis. 2d at

315, 533 N.W.2d at 785 (citing Hennekens v. Hoerl, 160 Wis. 2d 144, 152, 465 N.W.2d

812, 815 (1991)).

Defendants argue that plaintiff's injuries must have been complete as of December

2004 because plaintiff says its damages are the difference between plaintiff's worth at the

time Johnson started working for plaintiff until plaintiff entered into bankruptcy, meaning

that the date of injury would be December 21, 2004.  Defendants acknowledge, however,

that the date of injury could be April 15, 2005, when plaintiff's assets were sold in the

bankruptcy sale, and defendants note that plaintiff could argue that it did not have a right

to sue until a bankruptcy trustee was appointed on July 26, 2005.  Plaintiff does not

challenge any of these dates, so for the ease of discussion, I will consider April 15, 2005 as

the date of actual injury and July 26, 2005 as the date when plaintiff had a right to sue and

thus met all elements for its claim to accrue, absent any issue of discovery.  Because the

statutes of limitations are no longer than six years for any of plaintiff's claims and plaintiff

filed its complaint July 31, 2012, an accrual date of July 26, 2005 would mean that

plaintiff's claims are barred by the statutes of limitations.

However, plaintiff argues that its claims cannot be barred by the statutes of

limitations for two reasons.  First, it says that under the discovery rule its claims did not

accrue until it discovered its injuries in 2008 or 2010.  Second, it says that defendants acted fraudulently to prevent plaintiff from bringing its claim on time so that equitable estoppel bars defendants from asserting the statute of limitations defense.  Plaintiff bears the burden of proof on both of these arguments.  John Doe 1 v. Archdiocese of Milwaukee, 2007 WI 95, 303 Wis. 2d 34, 93, 734 N.W.2d 827, 855 (Abrahamson, C.J., concurring in part and dissenting in part).  Both of plaintiff's arguments fail for reasons discussed below.

1.  Discovery rule

As noted above, the statute of limitations begins to run when a plaintiff's claim accrues.  Hansen v. A.H. Robins, Inc., 113 Wis. 2d 550, 560, 335 N.W.2d 578, 583 (1983); Jacobs v. Nor-Lake, Inc., 217 Wis. 2d 625, 636, 579 N.W.2d 254, 259 (Ct. App. 1998). A plaintiff's claim does not accrue until she has "discovered" certain facts, but accrual does not wait until plaintiff knows she has a legal claim.  Koehler v. Haechler, 27 Wis. 2d 275, 278, 133 N.W.2d 730, 732 (1965).  This "discovery rule" protects plaintiffs where there is a lapse between their injuries and their discovery of the facts that would be necessary to alert them to their injury, its cause or the facts underlying the wrong committed against them. Hansen, 113 Wis. 2d at 560, 335 N.W.2d at 583.

What facts are necessary for claim accrual varies by the claim asserted.  "[T]ort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first."  Hansen, 113 Wis. 2d at 560, 335 N.W.2d at 583.  See also Borello v. U.S. Oil Co., 130 Wis. 2d 397, 408, 388 N.W.2d 140, 144 (1986) ("[A]

13

cause of action . . . will not accrue until the victim discovers, or in the exercise of reasonable diligence should have discovered, the fact and probable cause of injury" (quoting Doe v. Archdiocese of Milwaukee, 211 Wis. 2d 312, 367, 565 N.W.2d 94, 116 (1997)); Below v. Norton, 2008 WI 77, ¶ 88, 310 Wis. 2d 713, 748, 751 N.W.2d 351, 368 ("Tort claims . . . accrue when the injury is (or should have been) discovered."). In addition, "a tort claim accrues only when the identity of the defendant is discovered." Spitler v. Dean, 148 Wis. 2d 630, 637-38, 436 N.W.2d 308, 311 (1989). For fraud claims to accrue, the plaintiff must "know of facts constituting the fraud," Wis. Stat. § 893.93(1)(b), although "it is not necessary that a defrauded party have knowledge of the ultimate fact of fraud." Koehler, 27 Wis. 2d at 278, 133 N.W.2d at 732.

Under either type of claim, full knowledge of defendants' bad acts or of plaintiff's harm is not required for the claim to accrue; the plaintiff need only know that she has been injured and who is potentially responsible. Pritzlaff, 194 Wis. 2d at 317, 533 N.W.2d at 786 ("That [plaintiff] was unaware of additional harm ('severe emotional distress') only created uncertainty as to the amount of damages and did not toll the period of limitations.").

Moreover, plaintiff need not know any of these facts with complete certainty. Claypool v. Levin, 209 Wis. 2d 284, 300, 562 N.W.2d 584, 590 (1997) ("[The discovery] standard also does not require that the potential plaintiff know with certainty the cause of her injury."). The degree of certainty depends on the particular circumstances of the case. Goff v. Seldera, 202 Wis. 2d 600, 611-12, 550 N.W.2d 144, 149 (Ct. App. 1996) ("[I]n an appropriate case, an initial suspicion may trigger the discovery or the obligation to exercise

reasonable diligence to discover the injury.  However, in another case, a greater degree of certainty may be required. The point is that every case must be judged on its own facts from the standpoint of the reasonable person.").  However, "[a] plaintiff cannot wait until he or she is certain about the cause, or wait for expert verification of known information." Id.  But see Baldwin v. Badger Mining Corp., 264 Wis. 2d 301, 315-16, 663 N.W.2d 382, 388-89 (Ct. App. 2003) (finding a genuine issue of material fact as to accrual date when plaintiff's doctor and employer assured him that his respiration mask was safe).

"[O]nce injury and cause are known, plaintiffs must act diligently to determine whether their injury was due to the breach of a duty." Lewis v. Paul Revere Life Insurance Co., 80 F. Supp. 2d 978, 1005 (E.D. Wis. 2000) (interpreting Wisconsin law).  A plaintiff acts with reasonable diligence if she pursues the investigation of her potential claim in the manner a reasonable person would.  Hammack v. DeLonghi, S.p.A., 914 F. Supp. 303, 306 (E.D. Wis. 1996) (citing Carlson v. Pepin County, 167 Wis. 2d 345, 353, 481 N.W.2d 498, 501 (Ct. App. 1992)).  See also Spitler, 148 Wis. 2d at 638, 436 N.W.2d at 311 (1989) (Reasonable diligence is "such diligence as the great majority of persons would use in the same or similar circumstances.").  "Plaintiffs may not close their eyes to means of information reasonably accessible to them and must in good faith apply their attention to those particulars which may be inferred to be within their reach." Id., 148 Wis. 2d at 638, 436 N.W.2d at 311.  Thus, a plaintiff is expected to investigate her claim.  All a plaintiff needs are the "essential facts as will, if diligently investigated, disclose the [claim]." Koehler, 27 Wis. 2d at 278, 133 N.W.2d at 732 (quoting Milwaukee Western Bank v. Lienemann

(1961), 15 Wis. 2d 61, 65, 112 N.W.2d 190, 192).  See also  Stroh Die Casting Co. v. Monsanto Co., 177 Wis. 2d 91, 502 N.W.2d 132 (Ct. App.1993).

The questions of what information a plaintiff needs for her claim to accrue as well as whether plaintiff exhibited reasonable diligence are objective ones.  Carlson, 167 Wis. 2d at 353, 481 N.W.2d at 501.  Both are questions of fact that are suitable for summary judgment only when the facts are undisputed and when only one reasonable inference can be drawn from the facts.  John Doe 1, 303 Wis. 2d at 70, 734 N.W.2d at 844.  See also Dakin v. Marciniak, 2005 WI App 67, ¶ 14, 280 Wis. 2d 491, 504, 695 N.W.2d 867, 873 ("When the material facts are undisputed and only one inference can reasonably be drawn, whether a plaintiff exercises reasonable diligence in the discovery of an injury is a question of law."); Groom v. Professionals Insurance Co., 179 Wis. 2d 241, 248-49, 507 N.W.2d 121, 124 (Ct. App. 1993).

In this case, the relevant material facts are not in dispute.  Both sides argue that the only reasonable inference from those facts favors them, but only one is correct.

Plaintiff argues that its claims did not accrue until January 2010 or September 2008 at the earliest.  It favors the January 2010 date because that is when the state court judge entered judgment in plaintiff's other litigation, which plaintiff says revealed the judge's belief that the conspiracy was real and that these defendants likely played a role as well.  This argument is a nonstarter.  Agreeing with it would mean that a plaintiff could wait until after a judgment has been entered against one set of defendants to bring its claims against another set of defendants for the same injury, regardless of the statute of limitations.  This sort of

16

delay defies the principles of civil procedure and efficient judicial administration. Cf. Johnson v. Heintz, 73 Wis. 2d 286, 296, 243 N.W.2d 815, 823 (1976) ("Expiration of the statute of limitations within which the claimant must bring his damage action results in an extinguishment of that claim against those potential defendants not then parties to a commenced proceeding.").

Alternatively, plaintiff points to September 23, 2008 as the date it discovered that defendants caused its injuries because it was the date that plaintiff deposed defendants Tenenbaum and Bohl and learned that Gray Plant represented First Products, Inc., the company formed by Johnson to purchase plaintiff's assets in a bankruptcy sale. Plaintiff says that Gray Plant's representation of First Products, Inc. is what first alerted it to investigate defendants because that fact showed their financial motivation for participating in the conspiracy: a promise or chance to represent whatever company Johnson would form to acquire plaintiff's assets. Plaintiff argues that it "had no reason to suspect [d]efendants' role in the conspiracy" until it learned those facts, and that this is the earliest date any of its claims could have accrued. Plt.'s Opp. Br., dkt. #108, at 23.

On the other hand, defendants argue that it was well before September 2008 that plaintiff had sufficient facts to alert it to investigate defendants and indeed to discover it had a claim against defendants. Defendants point to two dates by which plaintiff should have had sufficient information to investigate or bring its claims: June 27, 2006, the day plaintiff amended its complaint to include additional defendants in the state court litigation, and May 6, 2006, the day shareholder Richard Wanke emailed plaintiff's receiver Sullivan and

17

informed him of his suspicions about defendants' pricing of stocks and acting with a "conflict of interest." Dft.'s Reply Br., dkt. #146, at 12. Which of these dates should apply to plaintiff's claims is immaterial because the statute of limitations is no longer than six years and both events took place more than six years before July 31, 2012, the date on which plaintiff filed its complaint in this case.

As an initial matter, even if plaintiff is correct that its claims did not accrue until September 2008, its breach of fiduciary duty claim is untimely because this cause of action has a statute of limitations period of two years (and it would be untimely even if the period were three years).

I conclude that plaintiff's claims accrued no later than April 7, 2006, when plaintiff received its client file from defendants. I reach this conclusion for two reasons. First, the information in the file disclosed defendants' supposed fraud and gave plaintiff notice of the possible cause of its injuries. Koehler, 27 Wis. 2d at 278, 133 N.W.2d at 732; Jacobs, 217 Wis. 2d at 636, 579 N.W.2d at 259. After all, plaintiff's original complaint relies on documents from that client file. Second, the date the claim accrues is the date a plaintiff gains reasonable access to the relevant information, not when she bothers to look. Doe, 211 Wis. 2d at 340, 565 N.W.2d at 105 (plaintiffs "must in good faith apply their attention to those particulars which may be inferred to be within their reach"). In this case, that date is April 7, 2006. For example, in Dakin, the plaintiff "had the means of further information available to her, in the form of police reports identifying [other defendants], but apparently took no steps to investigate either the two men or the accident" and was therefore time-

barred.  Id. at ¶ 17.  In another case, "reasonable diligence required a plaintiff to examine hospital records which had the name of the treating doctor."  Hammack, 914 F. Supp. at 306 (citing Groom, 179 Wis. 2d at 250-51, 507 N.W.2d at 124 (Ct. App.1993)).  Plaintiff's situation is the same:  it had information disclosing defendants' supposed wrongful acts and its own injuries when it received the file in April 2006; therefore, its claims accrued at that time.  In the following sections, in which I consider plaintiff's arguments individually, the facts show that plaintiff could have discovered each injury and cause as early as April 7, 2006.

a.  Fraud

To bring a fraud claim, plaintiff must allege "with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9.  Under Wisconsin law, fraud for misrepresentation requires proving "first, that the statement of fact is untrue; second, that it was made with intent to defraud and for the purpose of inducing the other party to act upon it; and third, that [the other party] did in fact rely upon it and was thereby induced to act, to [its] injury or damage."  Williams v. Rank & Son Buick, Inc., 44 Wis. 2d 239, 242, 170 N.W.2d 807, 809 (1969).

Fraud claims accrue upon "the discovery, by the aggrieved party, of the facts constituting the fraud,"  Wis. Stat. § 893.93(1)(b), but "[a]ctual and complete knowledge of the fraud . . . is not necessary in order to set the limitation period running."  John Doe 1, 2007 WI 95, ¶ 51 (quoting Koehler, 27 Wis. 2d at 278, 133 N.W.2d at 732).  "What is

19

required is that [plaintiff] be in possession of such essential facts as will, if diligently investigated, disclose the fraud." <u>Milwaukee Western Bank</u>, 15 Wis. 2d at 65, 112 N.W.2d at 192.  Thus, for its claim to accrue, plaintiff had to have access to facts that would have disclosed defendants' alleged lies.

Plaintiff had the information it needed about these matters as of April 7, 2006, as shown by the fact that it is attempting to prove its fraud claims with information it possessed in April 2006.  Plaintiff's decision to ignore that information does not suggest reasonable diligence.  <u>Dakin</u>, 2005 WI App 67, at ¶ 17 ("[Plaintiff's] decision not to pursue a legal avenue that might have produced useful information is not evidence of reasonable diligence.").  <u>See also</u> <u>Doe</u>, 211 Wis. 2d at 367, 565 N.W.2d at 116.

Plaintiff's theory of fraud is that defendants represented to it that they would act in its best interest, all the while knowing they would not.  In its complaint and brief for summary judgment, plaintiff lists ways that defendants' alleged fraud injured it:  (1) defendants concealed their representation of Don Johnson; (2) defendants participated in the sale of stock to Johnson and others at a below market price ($0.01/share); (3) defendants suggested that Johnson form a new company to purchase plaintiff's assets; (4) defendants said they would aid in re-capitalizing and refinancing plaintiff but in fact ignored financing opportunities for plaintiff; and (5) defendants failed to review plaintiff's financial reports and to contact its former attorney.

Supporting its first allegation, plaintiff cites an email sent by Johnson to defendant Tenenbaum on March 1, 2004, as well as Tenenbaum's billing records for that day.  It also

cites the June 22, 2004 engagement letter that contained language acknowledging that Tenenbaum represented Johnson. These documents relate to defendants' representation of Johnson and thus were sufficient to alert plaintiff to this potential injury.

As to its second allegation, plaintiff cites a May 28, 2004 email from Johnson to Tenenbaum about buying stock for less than $0.01/share; a document from Johnson to Tenenbaum, sent July 2, 2004, titled "Restructure Plan and New Capital Plan"; time records of Gray Plant paralegals, "prepar[ing] stock certificates for KDC Foods"; and time records for defendant Dasari, who spent time on "stock certificate and stock ledger documentation issues." These documents show that defendants participated in stock purchases, which is enough information to disclose any fraud plaintiff believes defendants perpetrated against it in the below market stock purchase deal.

To support its third allegation, plaintiff cites an email exchange in which Johnson states that Tenenbaum suggested that he start his own company and purchase plaintiff's assets and Bohl's record of time for working on an asset purchase form. These documents disclosed any potential fraud related to defendants' alleged suggestion that conspirators form a separate company to purchase plaintiff's assets.

As to plaintiff's fourth allegation that defendants ignored financing opportunities, plaintiff hired defendants in part for their assistance in doing this, so it is hard to understand why plaintiff would not be aware of its injury as soon as defendants failed to do the job for which they were hired. Nevertheless, the file transferred by defendants to plaintiff on April 7, 2006 contained a long list of documents that showed defendants' work, or lack of work,

on plaintiff's financing.  This list includes the following: emails between defendants and Johnson on "bridge loan," "recapitalization" and "cash flow"; defendants' time records for work on "recapitalization" or "financial status"; defendants' time records for work on the Citizens Bank and Associated Bank matters; defendant Dasari's time records for work on loan documents; defendant Bohl's time on licensing agreements; and documents about an offer for financing from Van Clemens.  These documents provide more than sufficient information to disclose that defendants were vital players in plaintiff's financing issues, as well as in any fraud that plaintiff believes occurred related to plaintiff's financing.

As to plaintiff's fifth and final allegation, the documents provided facts that disclosed the need to investigate whether defendants were acting in plaintiff's best interests in other ways related to financing.  Had plaintiff reviewed these, it could have discovered whether defendants had reviewed plaintiff's financial records or sought files or information from plaintiff's former attorney.

Plaintiff has given no competent explanation for its failure to investigate the file until after September 2008.  I find that plaintiff's fraud claim accrued no later than April 7, 2006. The statute of limitations for fraud is six years.  Plaintiff brought its original complaint more than six years later, on July 31, 2012.  Its fraud claim cannot be saved by the discovery rule.

b.  Negligence

Plaintiff also brings a malpractice claim against defendants for negligent provision of legal services.  "An actionable legal malpractice claim consists of the following elements: (1)

22

the existence of an attorney-client relationship giving rise to a duty; (2) acts constituting negligence; (3) negligence as the proximate cause of the alleged injury; and (4) the existence and extent of injury." <u>Thiery v. Bye</u>, 228 Wis. 2d 231, 239, 597 N.W.2d 449, 453 (Ct. App. 1999) (citing <u>Lewandowski v. Continental Casualty Co.</u>, 88 Wis. 2d 271, 277, 276 N.W.2d 284, 287 (1979)). <u>See also</u> <u>Hicks v. Nunnery</u>, 2002 WI App 87, ¶ 33, 253 Wis. 2d 721, 746, 643 N.W.2d 809, 820. Tort claims accrue after a plaintiff discovers her injury, its cause and the identity of the defendant, or when, upon reasonable diligence, that plaintiff should have discovered these. <u>Hansen</u>, 113 Wis. 2d at 560, 335 N.W.2d at 583; <u>Jacobs</u>, 217 Wis. 2d at 636, 579 N.W.2d at 259 (statute of limitations begins running "when a potential plaintiff has information that would give a reasonable person *notice* of the cause of injury" (emphasis added)).

Relying on <u>Dakin</u>, defendants argue that once plaintiff knew the identity of some defendants, its claim accrued as to all defendants, but that is not the holding of <u>Dakin</u>. <u>Dakin</u>, 2005 WI App 67, ¶ 15 ("[T]he fact that a claim does not accrue until the plaintiff has knowledge of a suable party does not necessarily mean that it does not accrue until all suable parties are known."). <u>Dakin</u> stands for the proposition that a plaintiff may not be idle simply because she does not realize other persons might be responsible when she has information that would alert her to the potential liability of others. <u>Id.</u> at ¶ 17 ("Dakin had the means of further information available to her, in the form of police reports identifying [other defendants], but apparently took no steps to investigate either the two men or the accident."). Nevertheless, a plaintiff must have some facts that alert her to the identity of

23

defendants for her claim against those defendants to accrue. These rules apply to both intentional torts and negligence. <u>Doe</u>, 211 Wis. 2d at 335, 565 N.W.2d at 103.

"The application of [the discovery] rule is difficult in malpractice cases because the injury and the claim tend to merge." <u>Winskunas v. Birnbaum</u>, 23 F.3d 1264, 1266 (7th Cir. 1994) (interpreting Wisconsin law). For example, in a malpractice case against a lawyer who represented a plaintiff when she was wronged by another defendant, it may be difficult for that plaintiff to separate the wrongs of her lawyer from those of the other defendant. <u>Id.</u> Plaintiff may have had similar trouble in this case, especially since it alleges that its attorney worked together with the other defendants in a conspiracy. Moreover, mere "abstract concern" that defendants might be involved is insufficient for a tort claim to accrue. <u>Sokol Crystal Products, Inc. v. DSC Communications Corp.</u>, 15 F.3d 1427, 1430 (7th Cir. 1994) (interpreting Wisconsin law). On the other hand, for plaintiff's malpractice claim to accrue, plaintiff needs only a "lively suspicion" that defendants may be responsible. <u>Winskunas</u>, 23 F.3d at 1267.

Although this distinction may be difficult to discern in some cases, in this case it is clear that plaintiff knew of its injuries and had more than suspicion about defendants' involvement. In fact, plaintiff had enough information to know about its injury and cause and the identity of defendants once it saw the documents in the April 7, 2006 file.

Plaintiff's theory of negligence is that defendants failed to act in its best interests on several occasions, three of which have been discussed above (failure to pursue financing opportunities, failure to review financial records and failure to consult former attorney).

Plaintiff also contends that defendants were negligent for (1) failing to inform disinterested shareholders about the conspirators' plans to form a new company to purchase plaintiff's assets; (2) failing to inform plaintiff's board of directors of the law of fiduciary duties related to stock sales; and (3) failing to settle with the shareholders who were suing or threatening litigation against plaintiff.

Plaintiff's first allegation is simply a twist on the allegation it made in support of its fraud claim, which is that defendants suggested the conspirators form a new company to purchase plaintiff's assets. Thus, the documents from the April 7, 2006 file would have given plaintiff notice that defendants allegedly caused this injury. This means the claim accrued on April 7, 2006.

As to its second allegation, plaintiff does not explain why it would not have known what defendants said or did not say to plaintiff's board of directors. Even assuming that the knowledge of the board of directors could not be imputed to plaintiff, plaintiff had documents showing defendants' direct role in the stock sale and it knew the board of directors did not vote on this sale. Consequently, if plaintiff had examined the file, it would have had enough facts to show that defendants were part of the cause of its injuries.

Although plaintiff never explains why defendants should be held responsible for plaintiff's oard of directors' votes on whether to settle with shareholders, again plaintiff would have had notice of this alleged injury had it consulted the April 7, 2006 file. That file contained numerous documents showing defendants' central role in the negotiations for settlement with shareholders: an email from defendant Bohl to defendant Dasari about how

25

he would like to organize the information related to shareholder settlement efforts; Bohl's time records for work on settlements with share and equity holders; and a memorandum attributed to Bohl that lists the "problem" shareholders as well as ways to deal with them. If plaintiff believed something went wrong with the negotiations, it should have investigated defendants as soon as it had the documents linking them to these negotiations, on April 7, 2006.

Only one reasonable inference may be drawn from these facts: plaintiff had information showing defendants' potential responsibility for its injuries as early as April 7, 2006. Thus, plaintiff's claim of negligent provision of legal services accrued no later than April 7, 2006, and the discovery rule does not preserve the claim from the statute of limitations defense.

c. Conspiracy

Plaintiff brings two conspiracy claims: one for "civil conspiracy" and one for conspiracy to commit criminal theft. In Wisconsin, "[t]o state a cause of action for civil conspiracy, the complaint must allege: (1) The formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts." Onderdonk v. Lamb, 79 Wis. 2d 241, 247, 255 N.W.2d 507, 510 (1977). See also City of Milwaukee v. NL Industries, Inc., 2005 WI App 7, ¶ 25, 278 Wis. 2d 313, 328, 691 N.W.2d 888, 896. "The gravamen of a civil action for damages resulting from an alleged conspiracy is thus not the conspiracy itself but rather the civil wrong which has been

committed pursuant to the conspiracy and which results in damage to the plaintiff." Onderdonk, 79 Wis. 2d at 246, 255 N.W.2d at 509. See also Singer v. Singer, 245 Wis. 191, 195, 14 N.W.2d 43, 46 (1944); LaFond v. Elvig, 2003 WI App 188, 266 Wis. 2d 1062, 668 N.W.2d 563. Since plaintiff's claim is actually based on a wrongful act, which may be fraudulent or tortious conduct, the accrual of its conspiracy claim occurs whenever the underlying fraud or tort claim would accrue. Cf. Segall, 114 Wis. 2d at 481, 339 N.W.2d at 338 ("To identify the date of accrual, we identify the wrong."). Defendants revive their argument that once plaintiff knew of any defendants, its claims as to all defendants accrued, but for the reasons explained previously, that argument is incorrect.

Plaintiff does not identify the type of claim underlying its civil conspiracy cause of action, but whether it is tort or fraud is immaterial because plaintiff alleges four wrongful acts for which it had information that disclosed the fraud or tort: (1) the sale of below market stock to Johnson and others; (2) defendants' failure to pursue financing opportunities in an effort to make plaintiff insolvent; (3) their suggestion that Johnson start a new company and purchase plaintiff's assets; and (4) defendants' intimidation of shareholders Ron Dervetski, Richard Wanke and Stan Popko and plaintiff's former attorney, Geraci, through their settlement negotiation tactics.

All but the fourth allegation were also alleged as part of plaintiff's fraud claim. Thus, plaintiff had information disclosing the alleged conspiracy by April 7, 2006, as explained in the discussion of that claim. I conclude that plaintiff's fourth allegation is the same: facts that would have alerted a reasonably diligent plaintiff as to defendants' alleged acts of

27

intimidation were contained in the April 7, 2006 file.  Specifically, time records for Bohl showing that he had spent time on settlements and negotiations with R. Dervetski, Wanke and S. Popko, and time records for Dasari indicate she spent time on settlements with R. Dervetski, R. Wanke and S. Popko.  Moreover, plaintiff cites the "threat" to issue 1099 forms to Popko as a particularly inappropriate and intimidating negotiation tactic and Bohl's time records stated that he spent time on this exact issue, as do several email exchanges between plaintiff's employees and Bohl.  In addition, the April 7, 2006 file contained a memorandum attributed to Bohl in which he discusses various negotiation strategies for the shareholders, as well as "threats" to file complaints against plaintiff's former attorney, Geraci.

Plaintiff's claim of intimidation accrued no later than April 7, 2006.  The civil conspiracy claim's statute of limitations period is no longer than six years; thus, the claim is time-barred.

Plaintiff also brings a claim under Wis. Stat. § 895.446, which creates a civil action for theft under Wis. Stat. § 943.20(d).  (Plaintiff actually cited 943.20(b) in its complaint and now seeks to amend it.  The mistake is immaterial.  Even if the claim were properly pleaded, it is untimely.)  Plaintiff says the wrongful acts that it cites for its civil conspiracy claim are the same for this claim.  Plaintiff and defendants dispute whether the limitations period is two or six years for this claim, but in either case, the discovery rule fails to save the claim from the statute of limitations for the same reasons it does not save plaintiff's civil conspiracy claim.

As a final matter, I must address plaintiff's reliance on <u>Liuzzo v. United States</u>, 485 F. Supp. 1274, 1283 (E.D. Mich. 1980), for the proposition that the discovery rule should delay claim accrual until plaintiff knew about defendants' breach of duty with certainty. This reliance is misplaced.  First, <u>Liuzzo</u> is not controlling precedent.  Furthermore, even if it were, the case stands for a proposition different from the one plaintiff argues: it holds that a plaintiff needs to know the identity of the defendants for her claim to accrue, not that she must know that defendants breached their duty of care.  In <u>Liuzzo</u>, the discovery rule applied because the plaintiffs were unaware that one of the people responsible for their mother's death was an FBI informer and that they could sue the federal government for damages.  <u>Id.</u>  ("The facts of this case amply demonstrate that plaintiffs had no reason to commence an investigation into governmental complicity in their mother's murder until 1975, when Rowe publicly testified regarding his violent activities as an FBI informer.").  Under Wisconsin law, the claim does not accrue until the plaintiff knows the defendants' identities, but is not stayed until plaintiff knows with certainty that the acts defendants committed were unlawful.  <u>Spitler</u>, 148 Wis. 2d at 637-38, 436 N.W.2d at 311; <u>Lewis</u>, 80 F. Supp. 2d at 1005 (citing <u>Borello</u>, 130 Wis. 2d at 414, 388 N.W.2d at 140).  In this case, plaintiff knew defendants were its attorneys during the time of the alleged conspiracy and they  were associated with Johnson.

## 2.  Equitable estoppel

Under Wisconsin law, equitable estoppel prevents a defendant from asserting the

statute of limitations defense when that defendant takes steps to prevent the plaintiff from suing within the statute of limitations period or when that defendant acts in a fraudulent manner such that the plaintiff relies on the defendant and fails to sue within the statutory period. City of Madison v. Hyland, Hall & Co., 73 Wis. 2d 364, 383, 243 N.W.2d 422, 432 (1976) ("[A] defendant who fraudulently conceals a conspiracy is estopped to assert the statute of limitations as a defense.").

Plaintiff argues that equitable estoppel should apply to its situation because defendants intentionally hid 77 pages of handwritten attorney notes and 47 pages of other documents, including email correspondence. On March 10, 2006, plaintiff's attorney Sullivan requested its file from Gray Plant, and Gray Plant sent this file on April 7, 2006. Sullivan had requested that Gray Plant include attorney notes, but Gray Plant included only four pages of handwritten attorney notes when it turned over its file.

Defendants argue that plaintiff cannot assert equitable estoppel in this case because plaintiff's delay in bringing its complaint cannot be attributed to defendants' acts. In Hester v. Williams, 117 Wis. 2d 634, 644-45, 345 N.W.2d 426, 431 (1984), the Wisconsin Supreme Court held that for equitable estoppel to apply, plaintiffs "must have failed to commence an action within the statutory period because of his or her reliance on the defendant's representations or act." See also Lewis, 80 F. Supp. 2d at 1007 (interpreting Wisconsin law and holding the same). In other words, a defendant's bad behavior alone does not prevent it from using the statute of limitations defense. Rather, there must be some relation between this behavior and plaintiff's delay. Lewis, 80 F. Supp. 2d at 1007.

30

Moreover, a party's claim of "reliance is specifically forbidden in the context of equitable estoppel when it is not justifiable or reasonable." Id.

Plaintiff counters defendants' argument by saying that it would have relied on the 77 pages of notes in 2006 and would have investigated and added defendants to its first suit. But defendants point out that the matter of the undisclosed notes came to plaintiff's attention only after it had filed its complaint in this case, when defendants included these notes in their Rule 26 disclosures.  Although plaintiff amended its complaint after receiving the notes to add an allegation relating to the nondisclosure of the notes and to bolster its evidence on its other claims, it did not amend the substance of its claims as to the 2004 conspiracy and related matters.

Plaintiff was able to file its original complaint in this case before it had the notes or even knew that another 77 pages of notes existed.  Plaintiff says that the reason it could not file its complaint in 2006 but could in 2012, even without the notes, is that it by 2012 it had two pieces of information that it lacked before:  Gray Plant represented First Products, Inc. and the state court entered judgment against Johnson, First Products, Inc. and other defendants.  As an initial matter, plaintiff does not explain how these facts affected its ability to file a complaint.  Even if plaintiff could show that these facts allowed it to bring its claims, it has not explained how defendants' allegedly intentional concealing of the 77 pages of notes can be tied to its own delay.  In terms of the notes, plaintiff was in no different position in 2006 from the one it occupied in 2012 when it filed its complaint, so plaintiff's delay cannot be attributed to the nondisclosure of the notes.

31

Because plaintiff's failure to commence its claim was not a result of reliance on defendants' acts, I need not determine whether defendants acted appropriately.  It is clear that equitable estoppel does not prevent defendants from asserting a statute of limitations defense.

Thus, neither the discovery rule nor equitable estoppel can save plaintiff's claims.  The statute of limitations is no greater than six years for all of plaintiff's claims and bars plaintiff's fraud, negligence, civil conspiracy and conspiracy to commit theft claims.

## B.  Plaintiff's Remaining Claims

Plaintiff's remaining claims include a breach of fiduciary duty claim for defendants' representation of First Products, Inc. and fraud and breach of fiduciary duty claims for defendants' failure to disclose handwritten attorney notes when they transferred their file to plaintiff in April 2006.  To establish each of these claims, plaintiff cites Wisconsin law. As Minnesota citizens, defendants cite Minnesota's Rules of Professional Conduct and other Minnesota ethics sources but do not argue whether Wisconsin or Minnesota law applies to this claim.  "Where the parties have not identified a conflict in state law, [the Seventh Circuit Court of Appeals] will generally apply the law of the forum state."  Kochert v. Adagen Medical International, Inc., 491 F.3d 674, 677 (7th Cir. 2007).  Thus, I will apply Wisconsin law to these claims.

## 1.  Representation of First Products, Inc.

In <u>Berner Cheese Corp. v. Krug</u>, 2008 WI 95, ¶ 40, 312 Wis. 2d 251, 270, 752 N.W.2d 800, 809. the Wisconsin Supreme Court listed the elements for a claim of breach of fiduciary duty: "(1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the breach of duty caused the plaintiff's damage." "Attorneys owe a fiduciary duty of loyalty to their clients," including "absolute loyalty." <u>Sands v. Menard, Inc.</u>, 2010 WI 96, ¶ 53, 328 Wis. 2d 647, 673, 787 N.W.2d 384, 397-98 (internal citations omitted).

Plaintiff contends that defendants breached their fiduciary duties to it by representing First Products, Inc. from March 2007 to February 2010. Johnson was a central figure in First Products, Inc., which was incorporated in Minnesota in September 2004. With Johnson at the helm, First Products, Inc. purchased plaintiff's assets when plaintiff sold them in an asset sale in 2005. In 2006, plaintiff added First Products, Inc. as a defendant in its lawsuit. Plaintiff contends that First Products, Inc. is an adverse party and that defendants breached their fiduciary duties of loyalty by representing them.

Defendants respond by arguing that its representation of First Products, Inc. was not a conflict of interest because it never advised First Products, Inc. on any matters related to plaintiff. Defendants add that, even if its representation was improper, plaintiff cannot prove "any injury or damage," which is required to state a claim. Although defendants cite Minnesota's Rules of Professional Conduct for this proposition, Wisconsin's rules state the same premise: "Violation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been

33

breached."  Wis. Stat. R. Professional Conduct, Preamble.

Indeed, Wisconsin law requires plaintiffs to show damages to prove a breach of fiduciary duty claim.  Berner Cheese Corp., 2008 WI 95, at ¶ 58 ("[T]he law requires [plaintiff] to establish the magnitude of the damages it sustained as a result of [defendant's] alleged breach of fiduciary duty.").  Plaintiff makes no argument about damages specific to defendants' representation of First Products, Inc.  Its statement of damages pertains only to the larger conspiracy, for which its claims are time-barred.  Because it has failed to assert damages for defendants' alleged breach of fiduciary duty, it cannot proceed with this claim.


2.  Nondisclosure of notes

Plaintiff argues that defendants' failure in 2006 to deliver 77 pages of handwritten documents that were part of its file at Gray Plant was both fraud and a breach of fiduciary duty.  Plaintiff and defendants make the same arguments for both fraud and breach of fiduciary duty, and both of plaintiff's claims fail for the same reasons, so I will consider both legal claims together.

As outlined above, a breach of fiduciary duty claim has three elements: "(1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the breach of duty caused the plaintiff's damage."  Berner Cheese Corp., 2008 WI 95, at ¶ 40.  In Wisconsin, fraud claims require a plaintiff to prove "first, that the statement of fact is untrue; second, that it was made with intent to defraud and for the purpose of inducing the other party to act upon it; and third, that [the other party] did in fact rely upon it and

34

was thereby induced to act, to [its] injury or damage." <u>Williams</u>, 44 Wis. 2d at 242, 170 N.W.2d at 809 (1969).  Plaintiff says that defendants acted to defraud it and breached their fiduciary duty to plaintiff by failing to turn over handwritten notes when plaintiff's attorney requested them in April 7, 2006 and by failing to inform plaintiff that defendants were withholding some documents from the file transfer.  Plaintiff says it was injured because these documents would have assisted it in its claims in the state court litigation against the other defendants and would have alerted it sooner to defendants' role in the conspiracy.

Defendants contend that plaintiff was not entitled to the notes, so their failure to transfer them to plaintiff cannot be a breach of theirs duties or an attempt to defraud plaintiff.  Defendants cite ethics opinions from Wisconsin, Minnesota and the American Bar Association.  The Wisconsin Formal Ethics Opinion states that "certain papers maintained by the lawyer in client files may be the work product of the lawyer and need not be produced to the client on demand."  Wisconsin Formal Ethics Opinion E-00-03.  Among such papers are "internal memoranda concerning the client file, conflict checks, personnel assignments, and lawyers notes reflecting personal impressions and comments relating to the business of representing the client."  <u>Id.</u> (quoting Colorado Ethics Opinion 104 (1999)).

Plaintiff counters this argument by pointing out that the ethics opinion goes on to say that "[t]his information is personal attorney work product that is *not needed* to protect the client's interests."  <u>Id.</u> (quoting Colorado Ethics Opinion 104 (1999)) (emphasis added).  But plaintiff says that it *did need* the 77 pages of notes withheld by defendants to protect its interests.  Plaintiff says such information was necessary because it would have given it

further evidence for its state court litigation against other defendants and because it would have prompted its attorney to add the current defendants to its state court litigation.

However, as discussed earlier, plaintiff managed to bring its complaint against defendants without having these notes or knowing of their existence, so it is not clear that these notes were necessary for it to assert its rights against defendants. Furthermore, plaintiff won its case against some of the other defendants, and plaintiff cites no specific example of how the notes would have strengthened its case. As defendants point out, plaintiff never told defendants that it intended to use these notes for litigation purposes, so defendants were not on notice that items other than those they would produce generally would be necessary or helpful to plaintiff.

For these reasons, plaintiff has not shown (1) that it was damaged by the nondisclosure of the notes, which is a necessary element of both a fraud claim and a claim for breach of fiduciary duty; (2) that defendants breached their duties by failing to disclose information necessary to protect plaintiff's interests, as required to prove breach of fiduciary duty; or (3) that defendants acted with intent to defraud, as required to prove fraud. Berner Cheese Corp., 2008 WI 95, ¶ 40; Williams, 44 Wis. 2d at 242, 170 N.W.2d at 809. Consequently, plaintiff has not shown how defendants wronged it by failing to disclose the handwritten documents in their original file transfer in 2006.

Plaintiff also contends that defendants committed fraud by representing in their Rule 26 disclosures that they had disclosed the entire client file in 2006, including the notes. However, plaintiff cannot go forward on this claim because it did not plead it in its

36

complaint.  Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").  Moreover, plaintiff has not shown that defendants exhibited any intent to defraud it, and it has not proven any damages it suffered from defendants' alleged representation.

As a final point, defendants have several additional arguments:  (1) First Products, Inc. had purchased all of plaintiff's documents in the asset sale so plaintiff was not entitled to its client file; (2) plaintiff failed to plead this fraud with particularity; and (3) plaintiff mischaracterizes its former attorney's deposition testimony when it says Sullivan would have investigated defendants more vigorously in 2006 than he did, had he had the notes.  It is not necessary to address these arguments because plaintiff's claims are deficient for the reasons stated above.

## CONCLUSION

Defendants are entitled to summary judgment on all of plaintiff's claims.  Because I have not relied on any of the 11 declarations that defendants have moved to strike to determine the outcome of this matter and because none of plaintiff's claims survive summary judgment, I am denying defendants' motion to strike as moot.  Also, I am denying plaintiff's motion for leave to amend its complaint as moot because it makes no difference to the outcome of this matter whether plaintiff cited the correct statutory subsection in its amended complaint.

ORDER

IT IS ORDERED that

1.  The motion for summary judgment filed by plaintiff KDC Foods, Inc., dkt. #29, is DENIED.

2.  The motion for summary judgment filed by defendants Gray, Plant, Mooty, Mooty and Bennett; Phillip Bohl; Jennifer Dasari; Daniel Tenenbaum; and Attorneys' Liability Assurance Society, Inc., dkt. #30, is GRANTED as to all claims.

3.  Defendants' motion to strike plaintiff's 11 declarations (dkt. ##121, 123, 124, 125, 126, 127, 129, 134, 135, 136, & 139), dkt. #153, is DENIED as moot.

4.  Plaintiff's motion for leave to amend its complaint, dkt. #157, is DENIED as moot.  The clerk of court is directed to enter judgment accordingly.

Entered this 25th day of October, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge